## IN THE UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICAN | : | CR. NO. 1:CR-01-394 |
| | : | |
| v. | : | (Rambo, J.) |
| | : | |
| JAMES JOHNSON | : | (Filed Electronically) |

### GOVERNMENT RESPONSE AND BRIEF IN OPPOSITION TO THE DEFENDANT'S MOTION TO VACATE SENTENCE

AND NOW, the United States of America, by its undersigned counsel, submits the following Response and Brief in Opposition to the Defendant's Motion to Vacate Sentence pursuant to Title 28, United States Code, Section 2255:

### I.    STATEMENT OF FACTS AND OF THE CASE

The defendant, James Johnson, is a criminal recidivist and drug trafficker whose criminal record spans 15 years.  See Pre-Sentence Report, ¶¶ 27-40.  In the course of this decade of crime, Johnson has been convicted on at least two separate occasions of drug distribution offenses.   PSR ¶¶ 31 and 34.

By May, 2001 Johnson's persistent drug trafficking had resulted in his conviction of federal drug trafficking charges and his incarceration along with a co-defendant Willie Hills, at the Federal Correctional Institution in Schuylkill, Pennsylvania.

When Johnson learned that Hills had been transferred to FCI Schuylkill, Johnson confronted his co-defendant on the prison yard on the afternoon of May 26, 2001.  During an angry

discussion, Johnson displayed a homemade knife to his fellow prisoner while questioning Hills.  Following this confrontation, at approximately 7:00 p.m. on May 26, 2001, prison staff monitoring inmate outgoing telephone calls reviewed a call placed by Hills to his family in Harrisburg.  In this conversation Hills told relatives that he had been involved in a confrontation with Johnson, and claimed that Johnson had tried to stab him.  PSR ¶ 5

Alarmed by this report that Johnson might possess a knife, prison staff removed Johnson from his cell, and searched that cell later on the evening of May 26, 2001.  Inside the cell, prison officials found a knife fashioned from a sharpened 6-1/2 inch metal rod hidden in one of Johnson's sneakers.  Prison officials then notified the FBI of this discovery and that agency commenced an investigation into Johnson's possession of this weapon.  PSR ¶ 6

As part of that investigation, an FBI agent and a Bureau of Prisons employee interviewed Johnson in the Special Housing Unit of FCI Schuylkill on May 30, 2002.  After waiving his Miranda rights both orally and in writing, Johnson agreed to speak with investigators regarding this matter.  In the course of this interview, Johnson admitted that the knife found in the shoe in his cell was his, and specifically denied that the knife belonged to his cellmate.  Johnson went on to explain that he had found the knife in the prison, and had kept the weapon, concealed, in

his housing unit at the prison.  Johnson closed the interview by telling investigators that he was prepared to accept punishment for the weapon found in his cell.  PSR ¶ 7

Following these admissions by Johnson, federal authorities sent him a target letter.  Upon receipt of this target letter, Johnson placed a telephone call to an acquaintance outside the prison on June 6, 2001.  In this telephone conversation, which was intercepted and recorded by prison officials, Johnson asked his acquaintance to obtain details for him regarding the potential federal criminal charges which he faced.  During the conversation, Johnson explained to his acquaintance that prison officials were claiming that they had found a knife in his cell. When his acquaintance asked whether prison staff had found a weapon in his cell, Johnson stated "yeah."  Johnson's acquaintance then asked if the knife was his, and again Johnson stated that it was.  When is acquaintance repeated this question, asking "it was yours?"  Johnson replied "Yeah, basically, you know."  In response to questions from his acquaintance regarding why he would have a knife in his possession if he was forbidden from possessing any weapons, Johnson replied that he had "messed up" and "slipped up."  PSR ¶ 8

On December 12, 2001, Johnson was charged in a one-count indictment with possession of a weapon by an inmate, in violation of Title 18, United States Code, Section 1791.  Assistant Federal

3

Public Defender Thomas Thornton, Esq., was then appointed to represent Johnson in this criminal case.

From the time of his appointment, Mr. Thornton provided an active, aggressive, highly effective defense for Johnson. Indeed, Mr. Thornton's advocacy on behalf of Johnson was so effective that it resulted in a hung jury in the initial trial of this case in June 2002, despite the compelling evidence against Johnson. Ultimately, however, Johnson was convicted of this charge in a second trial of this case which concluded on November 6, 2002.

Johnson's case proceeded to trial on these two occasions only after Johnson rejected plea agreements tendered to him by the United States. It is Johnson's decision to reject these plea agreements which now forms the basis of his Motion to Vacate Sentence, a motion that challenges the effectiveness of his counsel. In his current pro se motion, Johnson claims that he would have pleaded guilty to this offense and avoided a trial if he had known that he might be sentenced as a career offender under the Federal Sentencing Guidelines for his weapons possession in prison. Specifically, Johnson complains that Mr. Thornton was ineffective in failing to adequately inform him of the potential application of the career offender guidelines to inmate weapons possession offenses in the summer and fall of

4

2002, when he rejected several plea offers extended to him by the government.

With respect to this narrow issue, which forms the gravamen of Johnson's current complaint, the pertinent facts can be simply stated.  At the time of Johnson's trials the law regarding the application of the career offender guidelines to inmate weapons possession offenses was both unclear and in transition   Within the United States District Court for the Middle District of Pennsylvania, district judges that had considered this issue had reached differing conclusions on this question, with some courts concluding that inmate weapons possession was a crime of violence for purposes of the career offender guideline, and other courts refusing to extend the career offender guideline to inmate weapons possession charges.  Moreover, the United States Court of Appeals for the Third Circuit had not definitively addressed this question at the time of Johnson's trials.  Indeed, it is entirely undisputed that the appellate court did not definitively rule on this issue until November 7, 2002, one day after the jury's verdict convicting Johnson of this offense.  See United States v. Kenney, 310 F.3d 135 (3d Cir. 2002)

As an experienced, accomplished defense counsel, Mr. Thornton was aware of the legal uncertainty relating to the application of the career offender guidelines to inmate weapons offenses like the crime committed by Johnson.  See Thornton

Declaration   Mr. Thornton briefed Johnson regarding the state of the law on this issue at the time of these trials, alerting Johnson to the fact that it was possible that the career offender guideline could apply to this conduct. <u>See</u> Thornton Declaration Knowing this, Johnson rejected the government's plea offers and proceeded to trial, insisting that he was innocent of the charge and was the victim of an unfairly selective prosecution. <u>See</u> Thornton Declaration

Following Johnson's conviction at trial the appellate court clarified the application of the career offender guideline to inmate weapons offenses, holding that such offenses were crimes of violence. <u>See</u> <u>United States v. Kenney</u>, <u>supra</u>. Despite this post-verdict adverse ruling, Mr. Thornton continued to advocate aggressively on behalf of Johnson, urging the court to refrain from applying the career offender guideline to his case. <u>See</u> Thornton Declaration

On June 26, 2003, the district court sentenced Johnson for his possession of this knife. Rejecting Johnson's arguments the court found that Johnson was a career offender and sentenced him to 55 months imprisonment. Johnson then appealed this conviction and sentence. On April 20, 2004, Johnson's conviction and sentence was affirmed by the appellate court. This Motion to Vacate was then filed by the defendant 11 months and 28 days after Johnson's conviction was affirmed, on April 18, 2005.

6

In his motion, Johnson now invites the Court to set aside his conviction and sentence by claiming belatedly that he was unaware of the potential application of the career offender guideline to his crime, and would have pleaded guilty had he known that he could have been sentenced as a career offender.  On the basis of this narrow claim Johnson contends that the performance of his counsel was fundamentally deficient and seeks to vacate his lawful conviction and sentence.

For the reasons set forth below, the United States submits that Johnson's complaints are both legally unsupported and factually incorrect.  Therefore, this Court should decline Johnson's invitation to condemn the performance of his counsel and vacate his lawful conviction and sentence.

**ARGUMENT**

A.    **JOHNSON WAS EFFECTIVELY REPRESENTED BY COUNSEL**.

Section 2255 of Title 28, United States Code, provides the statutory vehicle for collateral challenges by federal prisoners upon their sentences.  That statute provides, in pertinent part, that:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which

imposed the sentence to vacate, set aside or
correct the sentence.

Collateral challenges to sentence under Section 2255 are
extraordinary proceedings and place an exacting burden upon the
prisoner who seeks to vacate his sentence.  As a general rule,
relief under 28 U.S.C. § 2255 is limited to errors which were
jurisdictional; rose to the level of a constitutional violation;
resulted in a "complete miscarriage of justice"; or led to
proceedings which were "inconsistent with the rudimentary demands
of fair procedure."  See United States v. Timreck, 441 U.S. 780,
783-84 (1979), citing, Hill v. United States, 368 U.S. 424
(1962).  Applying this exacting standard courts have frequently
held that alleged errors in the application of federal statuses
do not constitute the type of fundamental errors cognizable under
28 U.S.C. § 2255.  See e.g., Fiumara v. United States, 727 F.2nd
209, 213 (2d Cir.), cert. denied, 466 U.S. 951 (1984); Kerr v.
Finkbeiner, 757 F.2d 604, 607 (4th Cir.), cert. denied, 474 U.S.
929 (1985); United States v. Stevens, 851 F.2d 140, 143-44 (6th
Cir. 1988); Bontkowski v. United States, 850 F.2d 306, 312 (7th
Cir. 1988).

Motions under Section 2255 must also meet stringent
procedural standards.  It is well-established that a collateral
challenge under Section 2255 may not serve as a substitute for a
direct appeal.  See e.g., United States v. Frady, 456 U.S. 152,
165 (1982) (collecting cases).  Thus, a failure to raise claims

at trial or on appeal generally constitutes a waiver of those claims in Section 2255 proceedings unless a convicted defendant can "show both (1) 'cause' excusing this double procedural default; and (2) 'actual prejudice' resulting from the errors of which he complains." <u>United States v. Frady</u>, <u>supra</u>, 456 U.S. at 168.

In particular, a defendant like Johnson faces an exacting burden when he collaterally challenges his sentence based upon the alleged ineffectiveness of his counsel. As the Supreme Court has noted:

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or ... sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or ... sentence resulted from a breakdown in the adversary process that renders the result unreliable.

<u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984).

Moreover, in assessing the competence of counsel, "[j]udicial scrutiny of counsel's performance must be highly deferential;" <u>Id</u>. at 689 and "a court must indulge a strong

9

presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. Applying this deferential standard courts have frequently rejected ineffective assistance of counsel claims like those advanced in this case.

These principles apply with particular force in a case such as this, where a defendant complains that he received deficient advice which caused him to forego a guilty plea and proceed to trial. In such a setting the petitioner must show: (1) that the advice he received was seriously deficient; and (2) that he would not have taken a trial except for this erroneous advice. United States v. Day, 969 F.2d. 39, 44-6 (3d Cir. 1992) See e.g. United States v. Pena, 233 F.3d 170, 175 (2d Cir. 2000)(even if counsel's explanation to defendant of implications of plea agreement was deficient, defendant was not prejudiced because he would have rejected plea agreement); Baker v. Barbo, 177 F.3d 149, 156 (3d Cir. 1999) (counsel's ignorance of statutory sentencing law was not prejudicial because there was no reasonable probability defendant could have obtained lesser sentence by pleading guilty); Jones v. United States, 178 F.3d 790, 794-95 (6th Cir. 1999) (counsel's alleged advice not to accept plea agreement was not prejudicial because defendant likely would have rejected plea anyway).

Johnson cannot sustain his burden of proof on these issues in this case. At the outset, Johnson errs when he suggests that

the law regarding the application of the career offender
guideline was clear at the time of his trials.  Quite the
contrary, the law in this area only became clear in this circuit
<u>after</u> Johnson was convicted at trial.

Moreover, Johnson is incorrect when he suggests that he was
completely uninformed regarding the potential application of the
career offender guideline to his conduct.  Rather, it is apparent
that Johnson's counsel, an effective, experienced, federal
criminal practitioner, warned Johnson of the possibility that he
could be considered a career offender when Johnson considered his
guilty plea options.  <u>See</u> Thornton Declaration

Finally, Johnson cannot show that he was unfairly prejudiced
by the choices which he made, since Johnson cannot demonstrate
that his decision to proceed to trial was influenced by these
sentencing factors.  Indeed, prior to this motion, Johnson has
never suggested that his decision regarding whether to plead
guilty was influenced by sentencing issues.  Instead, he has
consistently claimed -- falsely -- that he did not commit this
crime.  In a case such as this, where Johnson cannot show that
counsel's sentencing advice was material to the decision to
pursue a trial, Johnson simply is not entitled to collaterally
challenge is conviction and sentence.  <u>See</u> <u>e.g.,</u> <u>United States v.</u>
<u>Pena</u>, 233 F.3d 170, 175 (2d Cir. 2000)(even if counsel's
explanation to defendant of implications of plea agreement was

11

deficient, defendant was not prejudiced because he would have rejected plea agreement); Baker v. Barbo, 177 F.3d 149, 156 (3d Cir. 1999) (counsel's ignorance of statutory sentencing law was not prejudicial because there was no reasonable probability defendant could have obtained lesser sentence by pleading guilty); Jones v. United States, 178 F.3d 790, 794-95 (6th Cir. 1999) (counsel's alleged advice not to accept plea agreement was not prejudicial because defendant likely would have rejected plea anyway).

In short, this is not a case where the defendant received bad advice regarding a plea agreement, in an area where the law was clear, and the advice led the defendant to reject a plea he would have otherwise accepted.  Rather, in this case Johnson received good legal advice in a field where the law was unclear, but chose to reject that advice because of a misguided view that he would not be convicted.  In such a setting, Johnson cannot complain about the performance of his counsel.  Johnson's current situation is simply the product of bad choices made in the face of good legal advice.

## Conclusion

For the foregoing reasons, the United States requests that Johnson's motion be denied.

Respectfully submitted,

THOMAS A. MARINO
UNITED STATES ATTORNEY

BY:   S/MARTIN C. CARLSON
MARTIN C. CARLSON
FIRST ASSISTANT U.S. ATTORNEY
228 Walnut Street
Harrisburg, PA 17108
Phone: 717-221-4482
Fax:   717-221-4582
Martin.Carlson@usdoj.gov
PA Bar #33396

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


UNITED STATES OF AMERICA      :    CR. NO. 1:CR-01-394
                              :
              v.              :    (Judge Rambo)
                              :
JAMES JOHNSON                 :    (Filed Electronically)


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that he is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion to be competent to serve papers.  That on May 18, 2005, he served a true and correct copy of the foregoing

**Government Response and Brief In
Opposition to the Defendant's
Motion to Vacate Sentence**

by electronic means by sending a copy to each of the e-mail addresses stated below:

Addressee: Thomas Thornton, Esq.
           Federal Public Defender's Office
           100 Chestnut Street
           Harrisburg, PA  17101

and by placing said copy in a postpaid envelope addressed to the person(s) hereinafter named, at the places and addresses stated below, which is the last known address, and by depositing said envelope and contents in the United States Mail in Harrisburg, Pennsylvania.

Addressee: James W. Johnson
           FCI Allenwood Med.
           09137-067
           P.O. Box 2500
           White Deer, PA  17887

                              S/MARTIN C. CARLSON
                              MARTIN C. CARLSON
                              FIRST ASSISTANT U.S. ATTORNEY

Dated: May 18, 2005